LOREN G. BAXTER and LINDA W. BAXTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baxter v. Commissioner
Docket No. 25512-82.
United States Tax Court
T.C. Memo 1985-415; 1985 Tax Ct. Memo LEXIS 209; 50 T.C.M. (CCH) 741; T.C.M. (RIA) 85415; August 13, 1985. Curtis W. Berner, for the petitioners. Bernard Oster, for the respondent. PETERSON
MEMORANDUM OPINION PETERSON, Special *210 Trial Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson pursuant to section 7456(c) and (d) of the Internal Revenue Code[1] and General Order No. 8, 81 T.C. XXIII (1983). Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1978
$2,606
1979
373
After concessions, the sole issue remaining for decision is whether petitioners are entitled to a deduction under section 617 for mining exploration expenditures for the taxable year 1979. Petitioners are husband and wife and filed joint Federal income tax returns for the years in question. They resided in Danville, California at the time of filing the petition herein. On their Federal income tax return for the year 1979 petitioners claimed a deduction in the amount of $30,000 for development expenses pursuant to section 616 in connection with mining claim numbers 1236, 1237, 1249 and 1250 located in the Treasure Hill Claim group of the Wonder mining district in Churchill County, Nevada. Petitioners now assert that such *211 amount is properly deductible pursuant to section 617 as an exploration expenditure. Sometime during the year 1979 petitioner Loren G. Baxter, [2] through a friend, learned of Einar Erickson and the mining claims program (the program) in which he was involved. As a part of the program, Einar Erickson, a geologist, offered to stake a set of mining claims and perform exploration activities and geological services for each investor in exchange for $15,000. In late September 1979 petitioner sent to Mr. Erickson a check for $30,000. A notation on the check stated "Exploration for Treasure Hills-2 sets." Petitioner also signed a one page Standard Exploration Agreement (the agreement) which was not dated nor could petitioner recall the date the agreement was executed. Pursuant to the agreement, Mr. Einar Erickson agreed to perform the offered services for petitioner with regard to two sets of mining claims, a set consisting *212 of two claims each. On October 1, 1979, petitioner received from Einar Erickson statements concerning preliminary geological services and exploration rendered on the claims for a fee of $30,000. Prior to signing the agreement and paying Einar Erickson, petitioner asked a friend with a background in geology whether the geological procedures proposed by Einar Erickson were feasible. However, petitioner did not visit the claims staked in his behalf nor did he seek the opinion of any other geologist regarding the likelihood of finding minable ore on such claims. Einar Erickson represented to petitioner that silver and gold could be found in the areas which Mr. Erickson proposed to stake in sufficient quantities to warrant development. Petitioner accepted Einar Erickson and his representation regarding the claims at face value because Einar Erickson was a member of the same church as petitioner and was known by other church members known personally by petitioner. After investing in the program, petitioner made no inquiries regarding the progress of the exploration nor even whether any exploration was actually taking place. In order to have a valid mining claim on federal land the *213 claim must be staked, a Certificate of Location of Lode Mining Claim (location certificate) must be filed with the United States Department of the Interior, Bureau of Land Management, and the claim must be validated by the discovery of mineral in place upon the claim. In addition, to be properly staked, the perimeters of the claim and the discovery monument must be marked with from five to seven stakes. Ordinarily, the cost of staking a claim such as the claims in issue would not exceed $200 per claim and the cost of sampling and testing the samples would not exceed $200 per claim. The claims which were the subject of the Agreement were staked by Lynn Erickson (Einar Erickson's brother). Einar Erickson filed location certificates with the Bureau of Land Management for said claims on November 27, 1979. The certificates reflect that claims 1236 and 1237 were located on September 11, 1979, and staking was completed on September 12, 1979. The certificates also reflect that claims 1249 and 1250 were located on October 3, 1979, and staking was completed on October 3, 1979. In contrast to the representations made on the location certificates, the claims in question were incompletely *214 staked. Furthermore, there was no indication of any mining activity having been performed on the claims within the past fifty years. In addition, assays of samples taken from the claims revealed negligible gold and silver content. Although petitioner received a bar of silver weighing 4.3 ounces as a distribution from Silver International Mining, Inc., a corporation of which Einar Erickson was president, there was no indication that the bar was made of ore from petitioner's claims. Petitioner made no attempt to sell the bar which was worth no more than $175 in 1982, when it was received. [3]
During the same time frame, Einar Erickson agreed to perform services similar to those described in the agreement for other investors. As a part of the mining program, Einar Erickson filed location certificates for thousands of claims in sixty different districts, indicating that the claims described in the certificates had been located and staked for exploration. Petitioners take the position that the services which Einar Erickson *215 agreed to perform pursuant to the agreement constitute mining exploration. Furthermore, they argue that to the extent exploration activities were not performed, the amount paid is nevertheless deductible under section 617 because it was paid pursuant to an agreement which required Einar Erickson to perform such exploration services. Respondent maintains, however, that the services performed by Einar Erickson related to acquisition of the claims and not to mining exploration. Furthermore, respondent argues that petitioner did not intend any exploration of the claims, but rather was solely interested in receiving a future deduction at an inflated value, upon contribution of the claim to a charitable organization. Petitioners have claimed a deduction for expenses incurred in connection with mining activities. Prior to the commencement of mining production, certain mining expenditures are deductible under sections 616 and 617. Section 617 allows a deduction for certain mining exploration expenditures including: * * * expenditures paid or incurred during the taxable year for the purpose of ascertaining the existence, location, extent, or quality of any deposit of ore of other mineral, *216 and paid or incurred before the beginning of the development stage of the mine * * *. [Section 617(a)]. Section 616 allows a deduction for expenses paid or incurred for the development of a mine or other natural deposit if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed. Section 616(a). When considered together, sections 616 and 617 reflect a clear intent of Congress to allow as deductions all expenditures reasonably connected with preparations for extracting ore. Estate of DeBie v. Commissioner,56 T.C. 876, 892 (1971). See Kilroy v. Commissioner,T.C. Memo. 1980-489 and Kilroy v. Commissioner,T.C. Memo. 1973-7. [4]
*217 Although it is clear that all exploration activities will not lead to mine development and extraction of ore, it is likewise clear that the cost of such exploration is not deductible unless it is reasonably connected with the preparation for extraction. Thus, a taxpayer seeking to deduct exploration expenditures must honestly intend that ore be extracted as a result of his activities. He need not necessarily be successful in his endeavors, but he must have as his goal the extraction of ore. Petitioner has not demonstrated that he had such an intent. During 1979, petitioner was employed as a real estate executive. He considered himself an experienced and cautious businessman. As a businessman he tried to scrutinize the business transactions in which he became involved. However, with regard to the Treasure Hill mining claims he accepted without question the representations made to him by Einar Erickson regarding the gold and silver to be found on the claims. He did not visit the claims or seek a second opinion regarding their value. Based on the expert testimony presented at trial it is clear that such a second opinion would have shown clearly that the land was worthless as *218 a mining claim. He did not check to see whether exploration was taking place. Furthermore, petitioner paid $30,000 to Einar Erickson, and in exchange received staking and assaying which would not have cost more than $400 per claim in the open market. Petitioner's actions are not consistent with a goal of extracting ore from the claims. Rather, they are consistent with the intention to spend $30,000 regardless of the value of any ore to be extracted in exchange for a sizeable tax benefit. Although a taxpayer is free to arrange his financial affairs in a way which will minimize his tax burden, where the transactions have no economic substance apart from the tax benefits, such transactions will be disregarded. See Frank Lyon Co. v. United States,435 U.S. 561 (1978); Knetsch v. United States,364 U.S. 361 (1960); Gregory v. Helvering,293 U.S. 465 (1935); Estate of Thomas v. Commissioner,84 T.C. 412 (1985); Rice's Toyota World, Inc. v. Commissioner,81 T.C. 184, 196 (1983), affd. on this issue 752 F.2d 89 (4th Cir. 1985); Grodt & McKay Realty, Inc. v. Commissioner,77 T.C. 1221 (1981). *219 The instant case is such a situation. Accordingly, the deduction for exploration expenses is denied. Because we have concluded that the transaction lacked the necessary economic substance, it is unnecessary to decide whether a petitioner with a genuine intention to extract ore from a mining claim is entitled to deduct the cost of staking and filing a location certificate as exploration expenditures under section 617. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The amount here in dispute relates to the activities of Loren G. Baxter. Linda W. Baxter is a party to this litigation only because she filed a joint return with her husband. When used hereinafter in the singular, "petitioner" will refer to Loren G. Baxter.↩
3. The value of the bar is based on 4.3 ounces of ore with a 97.55 percent silver content. Petitioner testified that in 1982 silver was worth $35-$40 per ounce.↩
4. Estate of DeBie v. Commissioner,supra and the two Kilroy cases, supra, were decided on the basis of section 615 which was repealed by section 1901(a)(88), Pub. L. 94-455, 90 Stat. 1522, effective October 4, 1976, as a deadwood provision. Section 615 had been previously amended by section 504, Pub. L. 91-172, 83 Stat. 487, which provided that section 615 is inapplicable to expenditures incurred after December 31, 1969. Expenditures after that date were to be deducted under section 617. The effect of the amendment was to subject the deduction for exploration expenditures to the recapture provisions of section 617. Nothing in the legislative history of P.L. 91-172 indicates a change in the Congressional intent recognized in Estate of DeBie v. Commissioner,supra↩ to allow a deduction for expenditures reasonably connected with preparations for extracting ore, but rather to prevent a double deduction.